IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


CITY OF TALLAHASSEE,

    Plaintiff,

v.                                    CASE NO.  4:11cv395-RH/CAS

FEDERATED PUBLICATIONS, INC.,
d/b/a TALLAHASSEE DEMOCRAT,
and ACS STATE AND LOCAL
SOLUTIONS, INC.,

    Defendants.

_____/


## ORDER GRANTING SUMMARY JUDGMENT

This case presents the question whether the federal Driver's Privacy Protection Act prohibits a city from disclosing to a newspaper, in response to a public-records request, the violation notices the city sent to vehicle owners based on images captured by red-light cameras.  This order holds that the Act does not prohibit the disclosure.

I

The City of Tallahassee operates red-light cameras. It obtains assistance through a contract with ACS State and Local Solutions, Inc. ("ACS"). For convenience, this order often attributes the relevant acts to "the City," without separately describing the role of ACS. That ACS is involved does not affect the issues.

The City operates the cameras at a limited number of intersections for the purpose of capturing images of vehicles running red lights. A police officer reviews an image to determine whether it depicts a red-light violation. If so, the City sends the vehicle owner a violation notice. The City is able to do this because the camera captures the vehicle's license-plate number and, with that number, the owner's name and address are available through the state driver's-license records. Those records are maintained by the Florida Department of Highway Safety and Motor Vehicles ("DHSMV"), which makes them available to the City for this purpose.

The City does not file the violation notice in court. If the owner pays the required amount in response to the notice, the notice is filed away, and nothing else comes of it. *See* § 316.0083(1), Fla. Stat. If the owner does not pay the required amount, the City can issue a traffic *citation*. *See id.* § 316.0083(1)(c)1.a. The citation initiates a court proceeding and, as the City seems to acknowledge,

becomes a public record. But the City says the violation notice is different, because it is provided only to the vehicle owner, so that the personal information included in the notice remains private. The City says that disclosing the notice to anyone else would violate the DPPA.

II

Federated Publications, Inc. owns and operates the local newspaper, the Tallahassee Democrat. It made a public-records request for specific information included in the violation notices. At the time, the City had issued roughly 17,000 notices. In response to the public-records request, the City filed this action, seeking a declaration of whether the DPPA prohibits the requested disclosure.

The City named as defendants both Federated and ACS. ACS apparently is the actual custodian of the records.

Federated counterclaimed, asking for an order enforcing the Florida public-records statute by requiring the City and ACS to turn over the requested records. Federated also demanded an award of attorney's fees, as authorized under the public-records statute. Now pending are cross-motions for summary judgment. The motions have been orally argued. Both sides have agreed that the case presents legal issues properly resolved by summary judgment.

## III

The Driver's Privacy Protection Act ("DPPA") prohibits a state from disclosing "personal information" from its driver's-license records except for use in one of 14 specified ways. *See* 18 U.S.C. § 2721(a) & (b). A person who lawfully obtains the information may further disclose it for use in one of the 14 specified ways, subject to narrow exceptions not applicable here. *See id.* § 2721(c); *see also Welch v. Jones*, 770 F. Supp. 2d 1253, 1258 (N.D. Fla. 2011) (explaining this provision in some detail). The protected "personal information" includes an individual's name and address. *Id.* § 2725(3). A knowing violation is punishable by a fine. *Id*. § 2723(a).

Three of the 14 uses for which personal information may be disclosed are relevant here. Information may be disclosed:

> (1) For use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions.
>
> . . . .
>
> (4) For use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders, or pursuant to an order of a Federal, State, or local court.
>
> . . . .

(14) For any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety.

18 U.S.C. § 2721(b).

The disclosures that are routinely made as part of the red-light program—DHSMV's disclosure of the information to the City, and the City's inclusion of the information on a violation notice—easily come within each of these three authorized uses. The City's lawful functions include issuing a violation notice to a person accused of, or under investigation for, running a red light, bringing the disclosures within paragraph (1). A violation notice initiates a process that is informal but that is nonetheless an administrative proceeding, bringing the disclosures within paragraph (4). And the red-light program is specifically authorized by Florida law and relates to the operation of motor vehicles, bringing the disclosures within paragraph (14).

The question, then, is whether information that has been lawfully disclosed for use in these ways may be further disclosed to a newspaper in response to a public records request. The answer is yes.

Florida has a broad public-records law that easily reaches violation notices of this kind. *See* § 119.011(12), Fla. Stat. ("'Public records' means all documents … made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency"). If not for the DPPA, the City's

obligation to turn over these records would be clear. Indeed, the City and ACS do not seem to contend otherwise; their assertion is that the DPPA countermands the Florida public-records law in relevant respects, not that the public-records law, of its own force, does not reach these records.

The City has lawfully chosen to use personal information—the names and addresses of vehicle owners—in violation notices that, under Florida law, are public records. At least in a state in which records of administrative proceedings and violation notices of this kind are public records, the use of personal information in an administrative proceeding or violation notice, and its attendant disclosure to the public as a record of the proceeding or governmental action, is a "use specifically authorized under the law of the State that holds the record." And the use plainly "is related to the operation of a motor vehicle"; the whole process started with the running of a red light. The City's disclosure of the violation notices in response to Federated's public-records request thus will come within paragraph (14) and, based on analogous reasoning, will come within paragraph (4). The DPPA was never intended to prevent the disclosure of public records of this kind.

This reading of the DPPA is supported by the absurd results that would attach to a different reading. Thus, for example, driver's-license records are routinely introduced into evidence in court proceedings, some involving criminal

conduct having little or nothing to do with driving. An officer observes suspicious activity, calls in a license plate, learns the driver's identity, decides to follow up, goes to the driver's residence using information obtained from driver's-license records, and catches a bank robber, later explaining it all in court. Or an officer working a drug case shows an informant a driver's-license photograph to confirm a drug dealer's identity, and the officer later explains it in court and introduces the driver's-license photograph, perhaps to rebut a charge that the informant recently fabricated the story. Are these transcripts and exhibits now protected from disclosure by the DPPA? Of course not. Once properly used in a court proceeding, the information is public and can be disclosed without limits.

But to get to that result, one must either recognize a nonstatutory exception to the DPPA, or read the statutory exceptions as set out above—that is, as allowing the unlimited disclosure of information once it has been lawfully used in a civil, criminal, administrative, or arbitral proceeding, or for another lawful purpose related to operating a motor vehicle or public safety. On either view—that the disclosure is proper based on a nonstatutory exception to the DPPA, or that the DPPA is properly read as set out above—there is no sound basis for distinguishing the violation notices at issue here from the transcripts and exhibits in the hypotheticals. The notices initiate an administrative process, and like traffic

Case No. 4:11cv395-RH/CAS

citations and many other records, they document the City's activities and its interactions with its residents. The DPPA does not prohibit their disclosure.

One other point deserves mention. This is not a case in which the City has unnecessarily included on the violation notice extraneous personal information unrelated to the violation. Doing so would present other issues, including the City's obligation or ability to redact personal information not essential to the administrative proceeding or violation notice. *See Senne v. Vill. of Palatine, Ill.*, No. 10-3243, 2012 WL 3156335 (7th Cir. Aug. 6, 2012) (*en banc*).

## IV

Federated seeks an award of attorney's fees as authorized by the Florida public-records law. But the real issue here has been under the DPPA, not the public-records law. And in any event, a fee award is not mandatory under the public-records law. The City acted prudently in seeking a declaration of whether the DPPA prohibited it from disclosing the violation notices. The issue is close, and there is no clear authority on the issue one way or the other. As a matter of discretion, I choose not to award fees.

## V

For these reasons,

IT IS ORDERED:

1. Federated's summary-judgment motion, ECF No. 18, is GRANTED.

2. ACS's summary-judgment motion, ECF No. 23, is DENIED.

3. It is declared that the Driver's Privacy Protection Act does not prohibit the City of Tallahassee and its contractor ACS State and Local Solutions, Inc. from disclosing red-light violation notices—or excerpts of the information they contain—in response to an otherwise valid public-records request.

4. By September 10, 2012, the City and ACS must produce to Federated copies of the requested violation notices or excerpts of the information they include in a form acceptable to the City, ACS, and Federated.

5. The clerk must enter a judgment setting out the declaratory and injunctive relief included in paragraphs 3 and 4 and must close the file.

6. The court reserves jurisdiction to enforce the judgment.

SO ORDERED on August 9, 2012.

s/Robert L. Hinkle
United States District Judge
